UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSEPH FLORENCE,

    Plaintiff,

v.                                      CASE NO.: 8:12-cv–855-T-23EAJ

NOVO NORDISK, INC.,

    Defendant.

_____/

**ORDER**

Joseph Florence sues (Doc. 1) Novo Nordisk, Inc., for age discrimination and retaliation. Novo moves (Doc. 42) for summary judgment on each claim.

**BACKGROUND**

Born on May 27, 1953, Florence began working for Novo on January 8, 2001. Florence worked as a BioPharmaceutical Sales Manager and worked under a BioPharmaceutical Regional Director. Starting in 2009, Gary Staudt, the regional director, oversaw Florence. Although Florence received "Meets Expectations" ratings from his regional director in the years before Staudt's arrival, Florence received an "Approaches Expectations" rating for 2009.[1]

---

[1] The evaluations available are "Outstanding," "Exceeds Expectations," "Meets Expectations," "Approaches Expectations," and "Does Not Meet Expectations."

As Florence's new regional director, Staudt observed Florence for a day and on March 19, 2010, drafted a report evaluating Florence's performance. In the report, Staudt told Florence that Florence must work at least eight hours each day, must include marketing materials and marketing literature with sales presentations, must call more customers each day, must regularly communicate with the appropriate Novo personnel, must submit expense reports in a timely fashion, and must promptly respond to colleagues and management by using his company-provided Blackberry cellular phone.

Staudt again observed Florence on April 13, 2010. In a summary of the day, Staudt wrote that the workday lasted from 9:00 a.m. to 2:30 p.m. and that Florence called only four customers, three of which calls merely confirmed a future meeting.[2] After reading the summary, Florence sent Staudt an e-mail that said, "As the oldest reps [sic] in your region, the third oldest in the field in the US, and one of the most consistently successful, I can only hope that I am not being held to a higher performance standard than that to which my younger peers are held." (Doc. 49-2 at 3) Seeing the age discrimination complaint, Staudt forwarded Florence's e-mail to Debbie Green for an investigation. Because Florence, as he admits, "did not have any proof" of age discrimination, (Doc. 49 at 3), Novo closed the investigation. But Novo scheduled a meeting among Staudt, Florence, and two other Novo employees to "smooth things over" between Staudt and Florence.

---

[2] Novo's nationwide employee average is 7.2 calls per day.

As Florence's new regional director, Staudt observed Florence for a day and on March 19, 2010, drafted a report evaluating Florence's performance. In the report, Staudt told Florence that Florence must work at least eight hours each day, must include marketing materials and marketing literature with sales presentations, must call more customers each day, must regularly communicate with the appropriate Novo personnel, must submit expense reports in a timely fashion, and must promptly respond to colleagues and management by using his company-provided Blackberry cellular phone.

Staudt again observed Florence on April 13, 2010. In a summary of the day, Staudt wrote that the workday lasted from 9:00 a.m. to 2:30 p.m. and that Florence called only four customers, three of which calls merely confirmed a future meeting.[2] After reading the summary, Florence sent Staudt an e-mail that said, "As the oldest reps [sic] in your region, the third oldest in the field in the US, and one of the most consistently successful, I can only hope that I am not being held to a higher performance standard than that to which my younger peers are held." (Doc. 49-2 at 3) Seeing the age discrimination complaint, Staudt forwarded Florence's e-mail to Debbie Green for an investigation. Because Florence, as he admits, "did not have any proof" of age discrimination, (Doc. 49 at 3), Novo closed the investigation. But Novo scheduled a meeting among Staudt, Florence, and two other Novo employees to "smooth things over" between Staudt and Florence.

---

[2] Novo's nationwide employee average is 7.2 calls per day.

On October 11, 2010, after several months of both improvements and further performance deficiencies, Novo issued to Florence a thirty-day "performance improvement plan" (PIP) that identified deficiencies in Florence's job performance. The PIP explained that in recent months Florence (1) had failed to submit timely expense reports, (2) had failed to meet business administration deadlines, (3) had failed to communicate effectively, for example, by not timely responding to e-mails and by not using his Blackberry, (4) had failed to work at least eight hours each day, and (5) had failed to call at least seven customers each day.[3] To evidence each of the five deficiencies identified, the PIP included an example of, or a statistic demonstrating, Florence's poor performance.[4] (Doc. 42-4 at 23-25) The PIP explained to Florence that "if [Florence] demonstrate[d] a lack of compliance to the PIP at any time during [his] employment at Novo Nordisk Inc., or if immediate improvement [was] not achieved and sustained, further disciplinary action [would] occur, up to and including termination." (Doc. 42-4 at 25)

---

[3] Novo's employees average 7.2 calls each day, but Novo's records showed (1) that Florence had a year-to-date average of 3.8 calls each day when the PIP issued, (2) that Florence averaged 3.29 calls each day in July, 2010, and (3) that Florence averaged 4.3 calls each day in August.

[4] Florence says that the PIP "was without merit" and disputes the accuracy of each of the five performance deficiencies identified in the PIP. (Doc. 49 at 5) To prove flaws in the PIP, Florence offers a citation to Florence's deposition, Staudt's deposition, and the PIP. However, in Florence's deposition, which is the only one of the three sources that contradicts the PIP, Florence admitted that he submitted a September expense report late, that he submitted his July account plans late, that he submitted a "deep-drive account for B2 planning" late, and that "historically" his call averages have been low. Thus, Florence's citation supports most of the deficiencies in the PIP. For most of the other deficiencies, Florence avoided either admitting or denying the accuracy of the PIP.

However, Florence's performance failed to comply with the PIP. On October 15, 2010, four days after Novo issued the PIP, Staudt e-mailed Florence that Florence had already violated the PIP by submitting a weekly call summary late and in the wrong format.[5] On October 18, 2010, Staudt spent another workday with Florence. In his notes for the day, Staudt wrote that the workday began at 8:15 a.m. and ended at 3:45 p.m., that Florence spent the lunch break sleeping in Florence's car at a McDonald's restaurant, and that Florence could not use the Blackberry properly.[6]

On October 27, 2010, Florence sent Staudt an e-mail that Florence described as a response to the PIP. Florence wrote:

> [I]t seems I do little that is right, at least in your view. While I may not be able to prove it, my sense has been that I have been targeted for criticisms and, it appears, for termination while younger representatives who have not performed to my standard are left alone. When I voiced this concern a few months ago, things only got worse.

Again, Staudt forwarded Florence's complaint for an investigation – this time to Lisa Pinccinetti, a Human Resources Business Partner. Finding no discrimination, Piccinetti concluded the investigation.

Citing "little progress on the majority of items that composed [Florence's] PIP," Staudt recommended Florence's termination. (Doc. 42-7 at 15) Effective

---

[5] Florence faxed the belated summary rather than submitting the summary, as required by company policy, as an e-mail or Microsoft Word document.

[6] Florence asked for Staudt's help in distinguishing "sent" e-mails from "received" e-mails.

- 4 -

November 19, 2010, Novo terminated Florence. Thereafter, Florence sued Novo for age discrimination and retaliation.

## DISCUSSION

*1. Florence's Age Discrimination Claim*

Florence and Novo agree that the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to Florence's age discrimination claim. A *prima facie* case of age discrimination requires a showing that Florence "(1) was a member of the protected group of persons between the ages of forty and seventy, (2) was subject to adverse employment action, (3) was replaced with a person outside the protected group, and (4) was qualified to do the job." *Jameson v. Arrow Co.*, 75 F.3d 1528, 1531 (11th Cir. 1996). If Florence successfully proves a *prima facie* case of age discrimination, the burden shifts to Novo to "respond with a legitimate, nondiscriminatory reason for its actions." *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). If Novo effectively responds, Florence must establish that Novo's "articulated legitimate, nondiscriminatory reason was a pretext to mask unlawful discrimination." *Turlington*, 135 F.3d at 1432.

Novo argues that Florence cannot establish a *prima facie* case for age discrimination. While not challenging the first three elements, Novo argues that Florence cannot prove that Florence "was qualified to do the job." *Jameson*, 75 F.3d at 1531. Novo argues that Florence's poor job performance demonstrated a lack of qualifications. Not surprisingly, Florence disagrees.

- 5 -

*Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1360 (11th Cir. 1999), explains that precedent "quite clearly instructs that plaintiffs, who have been discharged from a previously held position, do not need to satisfy the *McDonnell Douglas* prong 'requiring proof of qualification.'" Instead, an employee's poor performance is not considered until after the employee has established a *prima facie* case. By holding his position for approximately ten years, Florence established his qualifications for the position.

Because Florence has presented a *prima facie* case, Novo must articulate a legitimate, non-discriminatory reason for terminating Florence. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1090 (11th Cir. 2004) ("The employer has a burden of production."); *see also Young.*, 840 F.2d at 828 (holding that "the fact that a plaintiff has established a prima facie case does not in and of itself foreclose the possibility of summary judgment being granted in favor of the employer"). Novo argues that the company fired Florence because Florence failed to meet the requirements of his PIP. Because Novo has articulated a legitimate,[7] non-discriminatory reason, Florence must establish that Novo's reason for termination is a pretext for discrimination.

---

[7] Florence half-heartedly argues that the PIP deficiencies articulated by Novo are not a legitimate basis for termination. Florence describes himself as "top performer" and says that he "was meeting his sales goals." (Doc. 49 at 11) However, Florence cites no precedent to support his argument, and Florence cites no evidence to support his factual assertions. In any event, Florence's argument fails; Novo's proffered reason concerns performance, which is legitimate, not age. At best, Florence shows that Novo acted foolishly, but the wisdom of Novo's decision is irrelevant. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) ("We do not sit as a 'super-personnel department,' and it is not our role to second-guess the wisdom of an employer's business decisions – indeed the wisdom of them is irrelevant – as long as those decisions were not made with a discriminatory motive."); *see also Ritchie v. Industrial Steel, Inc.*, 426 F. App'x 867, 872 (11th Cir. 2011) ("When an employer asserts that it fired the plaintiff for poor performance, it is not enough for the plaintiff to show that his performance was satisfactory.").

Many arguments that a plaintiff might offer in an effort to prove that an employer's ostensible reason for terminating an employee is a pretext for discrimination are insufficient. Insufficient pretext arguments include demonstrating that an employer acted on a misunderstanding, *Damon*, 196 F.3d at 1361, and demonstrating the foolishness of the employer's decision. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). Even proof of an "embarrassing" ulterior motive is insufficient. *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1399 (7th Cir. 1997) (listing, among permissible but "embarrassing" reasons, "nepotism, personal friendship, the plaintiff's being a perceived threat to his superior, a mistaken evaluation, the plaintiff's being a whistleblower, the employer's antipathy to irrelevant but not statutorily protected personal characteristics, a superior officer's desire to shift blame to a hapless subordinate . . . , an invidious factor but not one outlawed by the statute under which the plaintiff is suing[, a reason] unknown to the employer[, or] no reason"), *cited with approval in Alvarez*, 610 F.3d at 1266-67. In short, an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984). Accordingly, as *Ritchie v. Industrial Steel, Inc.*, 426 F. App'x 867, 872 (11th Cir. 2011), explains, "When an employer asserts that it fired the plaintiff for poor performance, . . . [the plaintiff] must demonstrate that the

employer did not believe that his performance was lacking, and merely used that claim as cover for discriminating against him on account of his age."

To prove his pretext argument, Florence argues that the PIP identified "minor" problems, that Florence improved on "most" of those problems, and that Novo intended to terminate Florence before the company issued the PIP.

Florence's first two arguments fail for the same reason – neither Florence nor the courts can second-guess the business judgment of an employer. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997). Novo, not Florence and not the courts, has the authority to determine what problem is "minor" and whether improvement upon fewer than all the problems suffices to justify termination.

Florence's third argument is flawed, as well. Florence argues that on September 30, 2010, Novo withdrew an invitation, earlier extended to Florence, to attend a pharmaceutical industry convention. Florence concludes that withdrawal of the invitation to attend evidences that Novo planned to terminate Florence as early as September, 2010. As *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997), explains:

> When deciding a motion by the defendant for judgment as a matter of law in a discrimination case in which the defendant has proffered nondiscriminatory reasons for its actions, . . . [t]he district court must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct.

(quotation marks omitted) *Combs*, 106 F.3d at 1538, further holds that the plaintiff can cast sufficient doubt on the employer's proffered by showing "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence."

Novo's withdrawal of the invitation shows the company's dissatisfaction with Florence, but any further inference is merely speculative. Novo issued Florence's PIP on October 11, 2010, a mere seven business days after Novo withdrew the invitation, and much of the misconduct identified in the PIP occurred before the withdrawal of the invitation. The effective concurrence of the PIP and the withdrawal of the invitation does not imply that the company intended to terminate (much less, discriminate against) Florence any more than the concurrence implies that the same misconduct that motivated Novo to withdraw the invitation also motivated the company to issue Florence a PIP.[8] Florence has cast no doubt on Novo's proffered reason, that is, has shown no "weakness, implausibility, inconsistency, incoherency or contradiction" that alerts the observer that the proffered reason is a ruse, a false front, behind which lurks prohibited discrimination.

But even assuming Novo used the PIP as a charade, Florence has cast doubt on only Novo's willingness to forgive, not Novo's motive.[9] At most, Florence has

---

[8] To the contrary, if Novo wanted to terminate Florence in September, the company jeopardized the termination by issuing Florence a PIP, which allowed Florence a chance to save his job by complying with the PIP's requirements.

[9] In other words, Florence at most has shown that Novo caused Florence false hope, not that

- 9 -

cast doubt on the veracity of the PIP's statement that Florence could retain his job by complying with the PIP's requirements, but Florence has cast no doubt on Novo's contention that Florence's poor performance motivated the company to issue Florence a PIP and terminate Florence. Novo's resolve, beginning in September, to terminate Florence eventually is fully consistent with the company's proffered reason because Florence performed his job poorly during and before September (as his PIP demonstrates).[10] Florence's task at this stage of the *McDonnell Douglas* test is to cast doubt on Novo's motive for terminating him, not the timing of the onset of that motive.[11] Thus, Florence has failed to cast not only "sufficient" doubt on Novo's proffered reason but any doubt on Novo's reason – Novo's reason for terminating Florence (and placing Florence on the PIP) is compatible with a desire on September 30, 2010, to terminate Florence in the near future.

In sum, Florence has not presented a successful argument that Novo used the proffered explanation as a pretext for discrimination. No reasonable jury, deciding

---

Novo discriminated against Florence.

[10] Novo is not harmed by also proffering Florence's poor performance in October, after the company withdrew the invitation, because Novo's dissatisfaction with Florence's performance before October 1 is consistent with Novo's dissatisfaction with Florence's performance after October 1. *Faircloth v. Herkel Investments Inc.*, 514 F. App'x 848, 851 (11th Cir. 2013) ("We have found insufficient evidence of pretext where an employer simply offered additional reasons for its decision, without disclaiming any previous reasons it provided.").

[11] Florence's timing argument is especially insufficient because the argument suggests that Florence's poor performance upset Novo even more than the PIP suggested. Florence's conclusion – that Novo, beginning in late-September, had no intention to retain Florence – casts doubt on Novo's willingness to forgive, not the reason for the company's dissatisfaction.

- 10 -

on the available record, could conclude otherwise. Thus, Florence's discrimination claim fails.

*2. Florence's Retaliation Claim*

Florence's second claim is a retaliation claim. The parties agree on the burden-shifting framework of the claim. Florence must present a *prima facie* case by showing that he engaged in ADEA-protected activity, that Novo subjected Florence to an adverse employment action, and that a causal connection exists between the protected activity and the adverse employment action. *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1117 (11th Cir. 2001). If Florence establishes a *prima facie* case, Novo must articulate a legitimate, nondiscriminatory reason for the adverse action. If Novo presents a legitimate, nondiscriminatory reason, Florence must prove that Novo proffered the reason as a pretext for discrimination.

Novo argues that because of the time that passed between the events, Florence cannot prove a causal connection between his first complaint of age discrimination, which occurred in April, 2010, and either his October, 2010, PIP or his November, 2010, termination. Novo's argument is correct. The six months that passed between Florence's first complaint and his PIP is too long for the mere passage of time to create an inference of causation. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough [proof to infer

causation]."). However, Florence's second age discrimination complaint came twenty-three days before his termination.

Viewed in isolation, Florence's October 27, 2010, age discrimination complaint and Florence's termination on November 19, 2010, might suffice as proof of causation based on proximity in time. But the circumstances of the termination eliminate a time-based inference of causation. Novo twice voiced disappointment with Florence's job performance before Florence's October 27 age discrimination complaint (and once before Florence's April complaint). Staudt confronted Florence about poor performance in March, and Novo issued the PIP on October 11; each warning occurred before Florence's October 27 complaint about Staudt. Because Novo expressed discontent and threatened termination before Florence complained of age discrimination, Florence cannot rely on a time-based inference of discrimination.[12] *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (explaining that an employer's "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence what[so]ever of causality"); *see also Saffold v. Special Counsel, Inc.*, 147 F. App'x 949, 951 (11th Cir. 2005) ("When an employer makes a tentative decision before protected activity occurs, the fact that an employer proceeds with such a decision is not evidence of causation."). Adopting another rule (1) would encourage employers to terminate poor performing employees

---

[12] The time line suggests, if anything, that Florence used discrimination complaints to retaliate against Staudt for Staudt's negative reviews.

- 12 -

immediately – rather than warn the employee and risk the employee insulating himself by complaining of discrimination – and (2) would encourage an employee fearing imminent termination to raise a discrimination complaint to avoid the burden of proving a *prima facie* case.[13]

Novo has articulated a legitimate, nondiscriminatory reason for terminating Florence – Florence failed to meet the expectations of his PIP.  *See Meeks v. Computer Assocs. Intern.*, 15 F.3d 1013, 1019 (11th Cir. 1994) (noting that the defendant's burden "is exceedingly light," and that "the defendant must merely proffer [legitimate] reasons, not prove them").  Thus, to prevail in this action, Florence must prove that Novo proffered the reason as a pretext for retaliation.  Florence offers no evidence of pretext.  And Novo's proffered reason for termination, as explained earlier in discussing Florence's discrimination claim, withstands attack as pretextual.  No reasonable jury could find that Novo proffered pretextual reasons for retaliation.

---

[13] Also, Novo argues, and Florence disputes, that the PIP is not an adverse employment action.  *Compare Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001) ("Negative performance evaluations, standing alone, do not constitute an adverse employment action sufficient to satisfy the second element of a *prima facie* case of retaliation under the ADA."), *and Moore v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 544 F. Supp. 2d 1291, 1308 (M.D. Fla. 2008) (Whittemore, J.) (finding that a PIP "more closely constitutes an adverse employment action" without resolving the question), *with Smith v. Quintiles Transnational Corp.*, 509 F. Supp. 2d 1193, 1203 (M.D. Fla. 2007) (Hodges, J.) (finding that a PIP constitutes an adverse employment action).  Resolving the dispute is unnecessary; Florence is correct in labeling his termination an adverse employment action, and the result of this order is not affected by the characterization of Florence's PIP.

## CONCLUSION

Novo's motion (Doc. 42) for summary judgment is **GRANTED**. The clerk is directed (1) to enter judgment in favor of the defendant and against the plaintiff, (2) to terminate any pending motion, and (3) to close the case.

ORDERED in Tampa, Florida, on October 17, 2013.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE